IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**LAURI F.,**[1]

    Plaintiff,

v.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,**

    Defendant.

**Civ. No. 3:20-cv-01929-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff Lauri F. was denied disability insurance benefits under Title II of the Social Security Act. She appeals to this Court, arguing the Administrative Law Judge ("ALJ") improperly rejected a medical source opinion. The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Because the Commissioner of Social Security's ("Commissioner") decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

**STANDARD OF REVIEW**

    A reviewing court will affirm the Commissioner's decision if it is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, 988 F.3d 1111, 1114–15 (9th Cir. 2021). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the Court reviews the entire administrative record, weighing both the evidence that supports and detracts from the ALJ's decision. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## DISCUSSION

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2012). The initial burden of proof rests on the claimant to meet the first four steps. If the claimant satisfies her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant can adjust to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.* If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner finds that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

At step two here the ALJ found Plaintiff had the following severe impairments: mild osteoarthritis status post arthroscopy and meniscectomy of right knee; mild lumbar degenerative disc disease; chronic obstructive pulmonary disease; obesity; and anxiety disorder. Tr. 16.[2] The ALJ assigned Plaintiff the following RFC:

> [T]he claimant . . . [can] perform light work as defined in 20 CFR 404.1567(b) except: The claimant can frequently push and pull with the right lower extremity. The claimant can frequently climb ramps and stairs; can frequently stoop but only occasionally kneel, crouch, and crawl. The claimant should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. The claimant can

---

[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

2 – OPINION AND ORDER

>understand and remember simple instructions and familiar detailed instructions. The claimant is able to have cursory contact with the general public and co-workers. The claimant is able to ocassionally [sic] accept constructive criticism and redirection from supervisors as needed.

Tr. 18. Based on the vocational expert's testimony, the ALJ concluded Plaintiff could perform jobs that exist in significant numbers in the national economy. Tr. 24. Accordingly, the ALJ determined Plaintiff was not disabled. Tr. 25.

The only issue before the Court is whether the ALJ improperly rejected the medical opinion of Carol Green, FNP. Pl.'s Op. Br. 3, ECF No. 8. Green opined that Plaintiff had several marked limitations in mental functioning, which would result in a finding of disability under step three of the sequential analysis. Plaintiff argues the ALJ failed to give specific and legitimate reasons[3] in finding Green's opinion not persuasive. *Id.* at 6.

Under the current regulations, an ALJ must evaluate all medical opinions and prior administrative medical findings for persuasiveness. In doing so, an ALJ considers the following factors: (1) supportability, as shown by relevant evidence and explanation; (2) consistency with the record as a whole; (3) the relationship between the source and the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other information in the record. 20 C.F.R. § 416.920c(c). Of these, supportability and consistency are the most important and must be articulated in the ALJ's decision. *Id.* § 416.920c(b)(2). Further, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior

---

[3] The Ninth Circuit has not yet evaluated the effect of the new 2017 SSA regulations on the "specific and legitimate" standard articulated in *Orn*. *See Robert S. v. Saul*, No. 3:19-cv-01773, 2021 U.S. Dist. LEXIS 65231, at *4 (D. Or. Mar. 3, 2021), report and recommendation adopted, 2021 U.S. Dist. LEXIS 59635 (D. Or. Mar. 29, 2021) (collecting cases). Other Ninth Circuit district courts have held that under the new regulations the "specific and legitimate" standard is still applicable as the standard against which the Court evaluates the ALJ's reasoning. *See John N. v. Comm'r Soc. Sec. Admin.*, No. 20-cv-01273, 2022 U.S. Dist. LEXIS 35027, at *17–18 (D. Or. Feb. 28, 2022) (citing *Scott D. v. Comm'r Soc. Sec. Admin.*, No. C20-5354, 2021 U.S. Dist. LEXIS 4083, at *4 (W.D. Wash. Jan. 8, 2021)).

3 – OPINION AND ORDER

administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a).

Nurse Green was Plaintiff's primary care provider for over twenty years. Tr. 467. When asked to evaluate Plaintiff's psychological impairments and resulting limitations, Green opined that Plaintiff had marked limitations in all four areas of mental functioning. Tr. 467–69. Regarding Plaintiff's ability to understand, remember, and apply information, Green listed Plaintiff's "moderate to severe anxiety" as the reason for Plaintiff's marked limitation. Tr. 469. Regarding Plaintiff's ability to interact with others, Green stated Plaintiff isolates herself and has a meaningful relationship with only her mother. *Id.* As to Plaintiff's ability to adapt or manage herself, Green explained that Plaintiff "does not attempt self-care activities" and "has not sought mental healthcare beyond what [Green] can do despite referrals and encouragement." *Id.* As to Plaintiff's ability to concentrate, persist, or maintain pace, Green's marked limitation was based on Plaintiff's "poorly controlled anxiety" and insomnia. *Id.*

Green also opined that Plaintiff would be impaired by greater than 20% in performing simple work tasks during an average 8-hour workday. *Id.* Green checked "yes" when asked whether Plaintiff would miss two or more days per month from a full-time job because of her symptoms, stating that Plaintiff "describes to [Green] her chronic fatigue." *Id.*

The ALJ found Green's opinion "non-persuasive as it is inconsistent with and unsupported by the medical evidence of record." Tr. 22. Contrary to Green's opinion, the ALJ found no more than mild or moderate limitations when evaluating Plaintiff's mental functioning. While Green noted anxiety, insomnia, and social isolation as the basis for Plaintiff's marked limitations, the ALJ pointed to other medical evidence and daily activities that suggested Plaintiff's symptoms were not as severe as to warrant marked limitations. *Id.* For example, the ALJ noted Plaintiff was

alert and oriented at examinations despite claiming intense sleep disturbance. Tr. 20. Regarding complaints of anxiety, the ALJ pointed out Plaintiff's normal mental status examinations. *Id.* As to her panic attacks, the ALJ noted Plaintiff was "not distractible with normal thought process and content at examination." *Id.* The ALJ pointed to various tasks and activities Plaintiff can perform, including grocery shopping, making meals, watching TV, taking care of her house and cat, and mowing the lawn, which contradicted Plaintiff's claims of social isolation and not leaving her room. Tr. 21. The ALJ also noted that Plaintiff has a parttime job that she drives to and works ten hours a week. *Id.*

Taking all of this into consideration, the ALJ found Green's marked limitations inconsistent with the record. Tr. 22. The ALJ limited Plaintiff to "simple and familiar detailed instructions" due to her alleged sleep disturbance, but found her "normal thought process and thought content supports no further limitations in this area of functioning." *Id.* The ALJ found that Plaintiff's abnormal mood and affect at examination warrant the social limitation indicated in the RFC, which includes "cursory contact with the general public and co-workers." Tr. 18, 21. Last, the ALJ found Plaintiff's "increased panic attacks support limiting [Plaintiff] to accepting occasional constructive criticism and redirection from supervisors as needed." Tr. 21.

Plaintiff argues the ALJ failed to provide sufficient reasons for rejecting Green's opinion. The ALJ, according to Plaintiff, "offered nothing more than her own *ipse dixit* assertion that the evidence supported less than marked impairment[s]." Pl.'s Op. Br. 6. The Court disagrees. As outlined above, the ALJ pointed to other evidence which contradicted Green's marked limitations. In fact, the ALJ provided several specific examples which suggested Plaintiff's symptoms, including sleep disturbance, social isolation, and anxiety, were not as severe as alleged and equated to no more than mild or moderate limitations. Tr. 17–18, 20–21. Plaintiff argues the ALJ failed to

address Green's conclusion that Plaintiff would be off task greater than 20% and miss two or more days of work per month. Pl.'s Op. Br. 6. But Green's conclusion was based on the same symptoms of anxiety and fatigue that the ALJ found inconsistent and unsupported by the record. Plaintiff further contends that it was improper for the ALJ to rely on her own paragraph B findings to reject Green's opinion. *Id.* While the ALJ did refer to her own findings, the ALJ's paragraph B findings relied on other medical evidence as well as Plaintiff's activities of daily living in determining the severity of Plaintiff's limitations. The ALJ's reasoning here is not circular as Plaintiff suggests.

Plaintiff also takes issue with the ALJ's reliance on Plaintiff's activities of daily living in finding only mild or moderate limitations as opposed to Green's marked limitations. Regarding Plaintiff's ability to understand, remember, or apply information, Plaintiff contends that her ability to perform household chores, prepare meals, grocery shop, and provide health and work history information is irrelevant to her ability to "learn, recall, and use information to perform work activities." Pl.'s Op. Br. 7. Plaintiff similarly argues that having good rapport with care providers does not support the ALJ's moderate limitation in interacting with others. *Id.* at 8. Plaintiff argues her daily activities of preparing meals and watching TV are not a valid basis for the ALJ's mild limitation in concentrating, persisting, or maintaining pace. *Id.* at 8–9. Finally, Plaintiff argues the ALJ's finding that Plaintiff had appropriate grooming and hygiene and got along well with providers at examinations does not support a mild limitation in adapting and managing herself. *Id.* at 9–10.

Plaintiff's argument that activities of daily living are irrelevant to her ability to function in a workplace setting is unavailing. When evaluating mental functioning limitations, an ALJ may "use all [] relevant medical and non-medical evidence" in the record. 20 C.F.R. pt. 404, subpt. P, app'x 1, § 12.00(F)(3)(a). Further, "[i]nformation about [a claimant's] daily functioning can help

[the ALJ] understand whether [the claimant's] mental disorder limits one or more of these areas; and, if so, whether it also affects [the claimant's] ability to function in a work setting." *Id.* § 12.00(F)(3)(b). The ALJ here relied on Plaintiff's ability to care for herself, her home, and a pet, as well as her ability to communicate information at hearings and healthcare appointments with good rapport, to determine that Plaintiff's mental functioning limitations are not as severe as indicated by Nurse Green. Such evidence is related to Plaintiff's ability to function in the workplace and, therefore, the ALJ did not err in her assessment of Plaintiff's mental functioning limits.

Plaintiff ultimately takes issue with the ALJ's evaluation of the evidence and presents an alternative interpretation. It is not this Court's role to second-guess an ALJ's decision that is supported by substantial evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Court finds the ALJ properly evaluated the evidence of record and provided specific and legitimate reasons for finding Nurse Green's opinion unsupportable, inconsistent, and therefore non-persuasive.

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 28th day of July, 2022.

      __s/Michael J. McShane_____
      Michael J. McShane
      United States District Judge